[No. H034835. Sixth Dist. May 16, 2012.]

CITY OF LIVERMORE, Plaintiff and Respondent, v.
DENNIS E. BACA et al., Defendants and Appellants.

COUNSEL

Law Offices of Catherine Fisher, Raymond E. Kong; Leon & Leon and Jeffrey A. Leon for Defendants and Appellants.

John J. Pomidor, City Attorney, and Jason R. Alcala, Assistant City Attorney, for Plaintiff and Respondent.

OPINION

RUSHING, P. J.—Dennis E. Baca appeals a judgment entered in an action for eminent domain commenced by the City of Livermore. On appeal, Mr. Baca asserts the trial court erred in excluding all of his proffered evidence of permanent and temporary severance damages related to the takings during in limine motions. Mr. Baca argues the court's exclusion of all of his evidence was tantamount to granting a nonsuit in favor of the City of Livermore. In addition, Mr. Baca claims the trial court erred in its definition of the project, including work by the State of California, which was not a party to this condemnation action. Mr. Baca urges this court to reverse the judgment.

STATEMENT OF THE FACTS AND CASE

In this action for eminent domain, respondent City of Livermore (City) sought three takings of portions of commercial property owned by appellant,

Dennis Baca (Baca). Baca owns the Airport Executive Center in Livermore, consisting of four separate parcels, each containing a commercial building completed in 2005. The buildings are located between Kitty Hawk Road to the west, and Rutan Drive to the east, with East Airway Boulevard fronting a portion of all four buildings.

In order to raise the intersection of Kitty Hawk Road and East Airway Boulevard in the City of Livermore, the City sought takings along the front of two of Baca's commercial properties: a partial fee simple of 300 square feet, a 15,000-square-foot slope and drainage easement, and a five-year temporary construction easement.

Baca's two commercial properties that are the subject of the taking slope downward from the buildings to Kitty Hawk Road and East Airway Boulevard. The City's construction project to raise the intersection will reverse the slope of the two Baca properties, changing the elevation to slope inward from the roadway down toward the buildings.

In April 2008, the City filed a complaint to exercise the power of eminent domain to acquire interests in Baca's commercial property. In September 2008, Baca filed an answer requesting additional compensation for the property interest, but not challenging the taking. Baca sought permanent severance damages in the amount of $1,317,016. Baca sought temporary severance damages in the amount of $501,286.

In May 2009, the matter proceeded to trial. The court began evidentiary hearings in limine to determine if Baca's proffered evidence in support of his severance damages was sufficient. After 10 days of hearings, the court granted the City's in limine motions, and excluded all of Baca's evidence of temporary and permanent severance damages.

In August 2009, Baca and the City entered into a stipulated judgment with the understanding that Baca would appeal the evidentiary rulings. Baca subsequently filed a notice of appeal.

### DISCUSSION

This appeal relates to the trial court's exclusion of all of Baca's proffered evidence in support of permanent and temporary severance damages in the City's action for eminent domain. The court's ruling was made after a 10-day hearing on motions in limine. At the conclusion of the hearing, the court ordered all of Baca's proffered evidence excluded, effectively granting a nonsuit in favor of the City.

During oral argument counsel for the City was asked if he could point to any eminent domain case that was disposed of by in limine motions. He forthrightly answered that he could not. Nor can we.

■ "In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial." (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1593 [71 Cal.Rptr.3d 361].) As case law recognizes, however, motions in limine also can function as "an objection to any and all evidence on the grounds [the] pleadings [are] fatally defective" for failure "to state a cause of action." (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 27 [61 Cal.Rptr.2d 518].) In such cases, the in limine motion "operate[s] as a general demurrer to [the] complaints or a motion for judgment on the pleadings." (*Ibid.*; see *Amtower v. Photon Dynamics, Inc.*, at p. 1593.) "Alternatively," where such motions are granted "at the outset of trial with reference to evidence already produced in discovery, they may be viewed as the functional equivalent of an order sustaining a demurrer to the evidence, or nonsuit." (*Edwards v. Centex Real Estate Corp.* at p. 27.) "A motion for nonsuit or demurrer to the evidence concedes the truth of the facts proved, but denies as a matter of law that they sustain the plaintiff's case." (*Id.* at pp. 27–28.)

When, as in the present case, the court's order excludes all evidence on a particular claim and, as a result, operates as a motion for nonsuit, we review the court's order de novo, examining the record in the light most favorable to the party offering the evidence. (*Dillingham-Ray Wilson v. City of Los Angeles* (2010) 182 Cal.App.4th 1396, 1403 [106 Cal.Rptr.3d 691].) In such cases, "all inferences and conflicts in the evidence must be viewed most favorably to the nonmoving party." (*Amtower v. Photon Dynamics, Inc.*, supra, 158 Cal.App.4th at p. 1595.)

Here, the trial court ruled all of Baca's proffered evidence to support his claims of temporary and permanent severance damages was inadmissible, thereby granting a nonsuit in favor of the City. We are wary of the practice of disposing of a claim through the use of in limine motions, particularly in an eminent domain action, where a trial on the issue of damages is mandated by the Constitution. Because the court granted a nonsuit in this case, we review the evidentiary rulings de novo.

*Permanent Severance Damages*

■ When property acquired by eminent domain is part of a larger parcel, compensation must be awarded not only for the part that is taken, but also for the injury, if any, to the part remaining. (Cal. Const., art. I, § 19; Code Civ. Proc., § 1263.410, subd. (a).) Such "severance damages" are measured by

subtracting the fair market value of the remainder property after the taking from its value before the taking. (Code Civ. Proc., § 1263.410; *City of San Diego v. Neumann* (1993) 6 Cal.4th 738, 745 [25 Cal.Rptr.2d 480, 863 P.2d 725]; *Contra Costa Water Dist. v. Vaquero Farms, Inc.* (1997) 58 Cal.App.4th 883, 903 [68 Cal.Rptr.2d 272].) The claimed loss in market value must directly and proximately flow from the taking. Thus, recovery may not be based on " ' " "speculative, remote, imaginary, contingent, or merely possible" ' " events. (*City of Hollister v. McCullough* (1994) 26 Cal.App.4th 289, 296 [31 Cal.Rptr.2d 415].)

Baca sought permanent severance damages for the loss in value to the remainder of his property from the change in the building's view and curb appeal, the change in drainage, the deeper utility line and resultant increased cost to service the line, and the greater risk of traffic hazards as a result of the project.

The trial court excluded all of Baca's proffered evidence supporting his severance damages on the basis that the evidence was conjectural and speculative. In so ruling, the court stated the legal reasoning upon which it relied: "The court's understanding of severance damages is that not all damaging interferences with property rights are actionable. And a determination must be made as to whether there is an actionable interference with a property right, or to use another term, substantial impairment. [¶] . . . [¶] Once the court finds that the taking has substantially impaired the property owner's rights, it is for the jury to determine the effect of the impairment, if any, on the property's market value."

█ The court's statement above that it must find the "taking has substantially impaired the property owner's rights," before evaluating whether the evidence should be presented to the jury to determine whether the taking should be compensated, demonstrates its misapplication of the standards for admissibility of evidence in an eminent domain action. In *Metropolitan Water Dist. of So. California v. Campus Crusade for Christ. Inc.* (2007) 41 Cal.4th 954 [62 Cal.Rptr.3d 623, 161 P.3d 1175] (*Metropolitan Water*), the Supreme Court considered the respective roles of the court and the jury in determining a party's entitlement to severance damages. (*Id.* at pp. 970–973.) The Supreme Court held that a trial court "must make certain determinations that are a predicate to the award of severance damages." (*Id.* at p. 972.) For example, the court noted, "[W]hat constitutes the larger parcel (for purposes of determining severance damages) 'is essentially a question of law for the determination of the court' [citation]; whether separate parcels may be aggregated and considered as one larger parcel is 'an issue of law to be decided by the trial court' [citation]; and whether a taking has substantially impaired access to the remaining property is 'a matter of law' for the court

[citation]." (*Id.* at p. 971.) In addition, it is for the trial court to "determine whether a party had a cognizable legal interest in the condemned property," sufficient to support a claim for severance damages. (*Ibid.*)

After the trial court makes any predicate legal determinations necessary to support an award of severance damages, and the property owner produces sufficient evidence tending to show that "some . . . aspect of the taking . . . 'naturally tends to and actually does decrease the market value' of the remaining property, it is for the jury to weigh its effect on the value of the property." (*Metropolitan Water, supra,* 41 Cal.4th at p. 973.)

■ Contrary to the trial court's statement of the standard for admissibility in this case, a showing of substantial impairment is only required when the taking interferes with access to the property from a public street, such as when a construction project causes traffic to be diverted around the affected property. In that circumstance, the court must determine whether the construction or other public project substantially impairs access to the affected property before the matter is submitted to the jury. (See *People v. Ricciardi* (1943) 23 Cal.2d 390 [144 P.2d 799].) Moreover, in discussing substantial impairment, the court in *Metropolitan Water* specifically noted it applied to "whether a taking has substantially impaired access to the remaining property." (*Metropolitan Water, supra,* 41 Cal.4th at p. 971.)

Here, Baca's claim for permanent severance damages did not require a showing of substantial impairment of access to his property. Baca alleges a decrease in value of his property due to view changes, effects on drainage, changes in the depth of utility lines, and increased traffic hazards as a result of the City's project. Therefore, the trial court was not required to find the takings substantially impaired Baca's property before determining if the proffered evidence was admissible. In doing so, the trial court in this case held Baca to an elevated standard for admissibility of the evidence.

### Curb Appeal and View

The court excluded Baca's evidence that the project negatively affected his property's view and curb appeal on the basis that such evidence was conjectural and speculative, and should not be presented to the jury. The court focused primarily on Baca's own testimony that the project would negatively affect the curb appeal, and affect his ability to secure tenants for the building, and in turn, affect the value of the property. The court opined that there was no evidence of a reasonable expectation that the view from the building would remain the same as when it was originally constructed. Therefore, any evidence of a negative change in the view in this case would be speculative and inadmissible.

██ A decrease in a property's aesthetically pleasing views is a basis for permanent severance damages. (*Pierpont Inn, Inc. v. State* (1969) 70 Cal.2d 282 [74 Cal.Rptr. 521, 449 P.2d 737], disapproved on other grounds in *Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694 [66 Cal.Rptr.2d 630, 941 P.2d 809].) In *Pierpont*, the court stated, "[i]tems such as view . . . are unquestionably matters which a willing buyer in an open market would consider in determining the price he would pay for any given piece of real property." (*Pierpont*, at p. 295.)

Moreover, in *Metropolitan Water*, the court specifically found that "negative visual and aesthetic impacts on the landscaping . . . at least arguably have the potential of affecting the market value of the remaining property." (*Metropolitan Water, supra*, 41 Cal.4th 954, 972, fn. omitted.) The court went on to state, "As long as the effect of these factors on market value is not conjectural, speculative, or remote, it is for the *jury* to decide the extent to which they may affect the value of the property. (*City of Pasadena v. Stimson* (1891) 91 Cal. 238, 259 [27 P. 604] [trial court erred in precluding jury from deciding whether the temporary escape of sewer gas during reasonable repairs to the sewer reduced the market value of abutting property]; *San Diego Gas & Electric Co. v. Lux Land Co.* (1961) 194 Cal.App.2d 472, 482 [14 Cal.Rptr. 899] [whether appraisers should have considered the effects of unsightly towers, damage to existing views, the shape of the remaining land, and interference with radio reception 'were questions of fact for the jury to determine'] . . . ." (*Id.* at pp. 972–973.)

Here, the trial court erred in ruling that Baca's evidence of change in curb appeal and view was conjectural and speculative. The undisputed facts in this case show that the project raised the roadway on which two of Baca's buildings were located, and created a reverse slope downward toward the buildings from the road. What once was "built up on an elevated pedestal," as described by Baca's appraiser, Mr. Roessler, would now be level, with a decreased view of the landscaping. There is no question that such a change in view and curb appeal could adversely affect the value of Baca's property, and at least arguably would have "the potential of affecting the market value of the remaining property." (*Metropolitan Water, supra*, 41 Cal.4th 954, 972, fn. omitted.) The evidence presented was not remote, and should have been submitted to a jury to determine whether the value of the remainder of the property was adversely affected.

### Reverse Slope and Effects on Drainage

Baca sought permanent severance damages for the new drainage conditions created by the reverse slope that was a result of the project. Baca asserts the

change of slope of this property to reverse down toward the building from the roadway will cause inferior drainage, and the increased risk of flooding.

Baca presented evidence that the change in slope will adversely affect drainage on his property. Specifically, one of the driveways on his property will be rebuilt from its current 3 percent slope to less than 1 percent slope. This will create pools of water over time that will damage the asphalt. In addition, the percentage of the rebuilt slope will violate the City's commercial driveway drainage standards, which require a minimum slope of 2 percent.

■ There is no question that the changed drainage conditions at least arguably have the potential of affecting the market value of Baca's property. The evidence of the risk of drainage damage as a result of the change in slope is neither speculative, nor conjecture, and should have been presented to the jury. "The jury is entitled to and should consider those factors which a buyer would take into consideration in arriving at a fair market value, were [the buyer] contemplating a purchase of the property . . . ." (*People ex rel. Dept. of Public Works v. Donovan* (1962) 57 Cal.2d 346, 352 [19 Cal.Rptr. 473, 369 P.2d 1].)

### Depth of Utility Lines

Baca sought permanent severance damages for the decrease in value to his property due to the increased depth of the existing utility lines on his property caused by the project. Baca asserts the project will cause existing utility lines to be buried more deeply, which affects the value of his property due to increased costs associated with maintenance of the lines.

Baca proffered evidence from his engineering expert, Mr. Diggins, who testified that the project would pile dirt on top of the existing utility lines on Baca's property increasing the depth of the lines from three and a half feet to between eight and 12½ feet. Mr. Diggins opined that the deeper conditions would increase maintenance costs of the lines. Moreover, Baca's appraiser, Mr. Roessler, testified that these conditions could arguably affect the market value of the property to a well-informed buyer.

In ruling Baca's evidence was inadmissible, the court determined that increased maintenance cost as a result of increased depth of the utility line was speculative, primarily because it was unpredictable if the lines would actually need maintenance in the future. The court concluded that the unpredictability made the evidence subjective, and inadmissible.

We find the evidence was sufficient to at least arguably have "the potential of affecting the market value of the remaining property." (*Metropolitan Water,*

*supra*, 41 Cal.4th 954, 972, fn. omitted.) There is no question that the utility lines were covered with more dirt, causing them to become buried more deeply. Any need to service the lines would necessarily be more difficult and more costly. A reasonably informed buyer of the property could consider this in determining the value of the property. As such, a jury should weigh this evidence to determine if it decreased the value of the remainder of the property.

### Traffic Hazards

Baca sought permanent severance damages for the increased risk of traffic hazards as a result of the project. Specifically, Baca claimed the new reverse slope from the nine-foot elevated roadway will increase the risk of traffic accidents from the roadway embankment onto Baca's property.

In support of his claim, Baca proffered the testimony of Mr. Diggins who stated that the City will be violating its own engineering standards by constructing the elevated roadway at a steeper slope and without a flat buffer area around the roadway as is required for other roadway projects in the City. Baca's appraiser testified that these changed traffic conditions postproject and the increased risks could arguably affect the market value of the remaining property to a well-informed buyer.

The instant case is similar to *Metropolitan Water District of Southern California*, where the court found the increased risk that a new pipeline could burst during an earthquake "at least arguably [had] the potential of affecting the market value of the remaining property." (*Metropolitan Water, supra,* 41 Cal.4th 954, 972, fn. omitted.) Here, the evidence presented showed an increased risk of traffic accidents as a result of the project. The evidence was not speculative, and was uncontroverted. The court erred by excluding it from the jury's consideration of damages.

### Exclusion of Expert Opinion Testimony

█ An objection to an expert's opinion that it is speculative must be carefully thought through by the trial court. It is inherent in valuation testimony that the expert's opinion based on other comparable transactions foresees what a willing buyer would pay and a willing seller would take. The willing buyer and willing seller are merely hypothetical persons. No one claims they exist. Juries are of course instructed on these limitations of expert testimony, yet have been able time after time to render verdicts in eminent domain trials that are not disturbed on appeal.

In this case, opinions of value could differ as to whether a property elevated above the road is worth more than property located below the road,

or whether service and maintenance of utility lines buried eight to 12 feet in the ground is more expensive than for those closer to the surface. Moreover, pooling of water on asphalt as a result of downhill drainage could be reasonably seen by a jury to decrease the value of the property, by increasing the need for maintenance of the asphalt.

■ The expert testimony in this case should not have been excluded as speculative. The question of the value of the remainder of the property was a jury question, and the expert testimony was necessary for the jury's determination.

*Temporary Severance Damages*

Baca sought temporary severance damages for impairment to his property because of construction activities associated with the project. Specifically, Baca asserted the effect of removal of all landscaping for a period of one year, and the closure of two of four driveways on his property for four months during construction entitles him to temporary severance damages. In addition, Baca asserts the access to his property was substantially impaired by the traffic detour traveling east through the intersection of East Airway Boulevard and Isabel Avenue created by the construction project.

### Loss of Driveway Access and Removal of Landscaping

Baca asserts he is entitled to temporary severance damages for the effects of the construction project on his property. Specifically, two of the four driveways to his commercial properties will be unusable during construction, leaving only one of the driveways for all three of his commercial properties.[1] In addition, all of the landscaping from the slope and drainage easement will need to be removed during construction. Baca asserts these construction effects entitle him to temporary severance damages.

The uncontroverted evidence shows that there will only be a single driveway open for all of Baca's affected commercial properties for at least four and possibly six months. The evidence also shows that tenants of Baca's property located at the intersection of Kitty Hawk Road and East Airway Boulevard will have to drive over an extra mile to access the one driveway available during construction. Baca's appraiser testified that the closure of the driveways by the project will substantially interfere with the property's actual intended use of rental and tenant occupancy.

There was also uncontroverted evidence presented to the court showing that all of the landscaping will need to be removed from the 15,000-square-foot slope and drainage easement area before construction of the elevated

---

[1] Of the remaining two driveways not affected by construction, the driveway on Rutan Drive was not accessible due to a court order.

roadway embankment. This construction will take approximately one year. Baca's appraiser testified that the temporary loss of landscaping for one year will interfere with Baca's actual intended use of the property for tenant occupancy.

The court erred in excluding evidence of the closure of two of the driveways to Baca's property and the evidence of the removal of landscaping from the jury's consideration for temporary severance damages. Baca presented sufficient, uncontroverted evidence that should have been given jury consideration of the extent of damage to his actual intended use. (See *Metropolitan Water, supra,* 41 Cal.4th 954, 975, specifically distinguishing *Placer County Water Agency v. Hofman* (1985) 165 Cal.App.3d 890 [211 Cal.Rptr. 894], where the court determined temporary severance damages would be available where the taking interfered with the actual intended use of the property.) Here, Baca's actual intended use of the property was for rental and tenant occupancy. Baca's evidence should have been presented to the jury to determine the extent of impact the construction activities had on that intended use.

### Detour of Traffic

Baca sought temporary severance damages for impaired access to his property due to a traffic detour on public streets surrounding the area. In this circumstance, a preliminary finding of substantial impairment to the affected property is required before evidence may be submitted to the jury to determine damages. (See *Metropolitan Water, supra,* 41 Cal.4th 954, 971.)

Baca presented the testimony of his appraiser, Mr. Roessler, who measured the distance of the detour around Baca's affected property. The construction will cause a 1.4 mile detour that will be in effect for 10 months. While a "fraction of a mile" caused by a traffic detour has been considered not to cause substantial impairment (*Brumer v. Los Angeles County Metropolitan Transportation Authority* (1995) 36 Cal.App.4th 1738, 1747–1748 [43 Cal.Rptr.2d 314]), a 1.4 mile detour for a period of 10 months is a significant distance during a significant period of time. A detour such as this would substantially impair access to Baca's property, and the trial court erred in concluding otherwise. The evidence of the traffic detour and its effect on access to Baca's property should have been presented to the jury.

### Evidentiary Rulings in Limine

 The temptation of the court to weigh evidence exists in many eminent domain cases. Seldom is a judge in a better position to evaluate a property's market value than the testimony of expert witnesses in such cases.

The evidence offered by Baca was such as to "naturally tend[] to and actually does decrease the market value" of the remainder. (*Gas & Electric Co. v. Miller & Lux Inc.* (1931) 118 Cal.App. 140, 144 [5 P.2d 34].) The offered evidence was clearly relevant. Evidence Code section 351 makes all relevant evidence admissible. The City's halfhearted reliance on Evidence Code section 310 illustrates the weakness of its case.

While evidentiary rulings are typically accorded deference, they are far from conclusive, particularly here where all of the admissions were on paper and are as easily reviewed by us as the trial court. Moreover, as we said previously, because of the effect of use of motions in limine as a vehicle for nonsuit, we review the trial court's evidentiary rulings de novo. We also emphasize that use of in limine motions as a nonsuit not only has no statutory basis, but it also denies parties their right to a jury trial.

*Trial Court's Definition of the Project*

In this case, the trial court defined the project to include three separate contracts. Contract one covers the construction of the raised intersection of Airway Boulevard and Kitty Hawk Road that is adjacent to Baca's commercial property. Contract two extends the road north of the raised intersection from contract one, and is on the opposite side of I-580 from Baca's commercial property. Contract three covers the off-ramps and construction of a freeway overpass for I-580.

Baca asserts the trial court erred by including the work in contracts two and three in the definition of the project. The facts demonstrate that the City's takings were only for the purpose of completing the work in contract one. The work for contracts two and three do not affect Baca's commercial property. Baca argues the court's improper definition of the project will reduce his severance damages if they are offset by benefits from the work completed in contracts two and three. (See Code Civ. Proc., § 1263.410, subd. (b).)

Here, neither contract two nor contract three should have been included in the definition of the project. The work included in contract two was not in an area affecting Baca's commercial properties that were the subject of the takings. Although contract two was constructed by the City, any benefit from the project could not be considered as part of an offset for the purpose of Baca's severance damages. (See *People ex rel Dept. Pub. Wks. v. Simon Newman Co.* (1974) 37 Cal.App.3d 398 [112 Cal.Rptr. 298].) Moreover, not only was the work in contract three in an area away from Baca's commercial property, but it was also to be completed by the State of California, not the City. Because the State of California is not a party to the

takings in this case, it also is not a party to any request for severance damages. Because contract three cannot be considered as a basis for damage, it also cannot be used as a source of benefit. (See *United Cal. Bank v. People ex rel. Dept. Pub. Wks.* (1969) 1 Cal.App.3d 1 [81 Cal.Rptr. 405].) The court erred in this case by including contracts two and three in the definition of the project.

### DISPOSITION

The judgment is reversed.

Premo, J., and Elia, J., concurred.

A petition for rehearing was denied June 15, 2012, and respondent's petition for review by the Supreme Court was denied August 8, 2012, S203534.